## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **CLIFFORD BOYNES, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2021-0253** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————————— | ) | |
| | ) | |
| **HELEN SHIRLEY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2021-0259** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————————— | ) | |
| | ) | |
| **MARY L. MOORHEAD, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2021-0260** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————————— | ) | |
| | ) | |
| **BEECHER COTTON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2021-0261** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————————— | ) | |

## MEMORANDUM OPINION

**Lewis, Senior District Judge**

THIS MATTER comes before the Court on Plaintiffs'[1] "Motion for Preliminary Settlement Approval and Related Relief" ("ArcLight and Freepoint Motion") (Dkt. No. 1098)[2] seeking preliminary approval of a $17,500,000 settlement with the "ArcLight and Freepoint" Defendants[3]; Limetree Bay Terminals, LLC (D.B.A. Ocean Point Terminals) ("LBT"), Limetree Bay Refining, LLC ("LBR"), BP Products North America, Inc.'s ("BPPNA") (together, "Opposing Defendants"[4]) "Response in Opposition to Plaintiffs' Motion for Preliminary Settlement Approval and Related Relief" ("Opposition") (Dkt. No. 1172); Plaintiffs' identically titled "Motion for Preliminary Settlement Approval and Related Relief" ("Pinnacle Motion") (Dkt. No. 1198) seeking preliminary approval of a $550,000 settlement with Pinnacle Services, LLC ("Pinnacle"); and Plaintiffs' "Notice of Additional Information" ("Notice") (Dkt. No. 1637).  For the reasons that follow, and the entire record herein, the Court will grant both Motions for Preliminary Settlement Approval before the Court.

---

[1] Plaintiffs are: Clifford Boynes, Margaret Thompson, Delia Almestica, Edna Santiago, Guidrycia Wells, Mary Moorhead, Sirdrina Isaac-Joseph, Esther Clifford, Alvina Jean-Marie Ilarraza, Ryan Alleyne, Agnes Augustus, Helen Shirley, Cristel Rodriguez, John Sonson, Isidore Jules, Virginie George, and minor child "O.N.", individually and on behalf of all others similarly situated.

[2] All docket numbers, unless noted otherwise, refer to the designated lead docket for the consolidated action, *Boynes v. Limetree*, No. 21-cv-0253.  (Dkt. No. 526 at 3, n.2).

[3] The "ArcLight and Freepoint" Defendants are: (1) ArcLight Capital Partners, LLC; (2) ArcLight Energy Partners Fund VI, L.P.; (3) ArcLight Limetree AIV, L.P.; (4) Limetree Bay Holdings, LLC; (5) Limetree Bay Preferred Holdings, LLC; and (6) Freepoint Commodities LLC.

[4] While Universal Plant Services, (VI), LLC ("UPS"), Elite Turnaround Specialists, Ltd. ("Elite"), EIG Global Energy Partners, LLC ("EIG"), and Limetree Bay Ventures, LLC ("LBV"), initially joined in the Opposition (Dkt. No. 1172 at 2), UPS, Elite, EIG, and LBV later withdrew from the Opposition (Dkt. Nos. 1598 at 2, 1609 at 2, 1631 at 1).  Accordingly, UPS, Elite, EIG, and LBV are not included as Opposing Defendants.

# I.    BACKGROUND

The background and history of this matter has been covered extensively by various Memorandum Opinions by this Court and the Third Circuit in this matter.  *See, e.g.*, *Boynes v. Limetree Bay Ventures, LLC*, 2026 WL 412328 (D.V.I. Feb. 12, 2026) (Dkt. No. 1685); *Boynes v. Limetree Bay Ventures, LLC*, 2025 WL 2097262 at *2 (D.V.I. July 25, 2025) (Dkt. No. 1316); *Boynes v. Limetree Bay Ventures, LLC*, 2024 WL 898245 at *1-3 (D.V.I. Mar. 1, 2024) (Dkt. No. 527); *Boynes v. Limetree Bay Ventures, LLC*, 2023 WL 4637319 at *1-2 (D.V.I. July 20, 2023) (Dkt. No. 389), *aff'd*, 110 F.4th 604 (3d Cir. 2024); *Boynes v. Limetree Bay Ventures, LLC*, 2023 WL 3166603 at *1-3 (D.V.I. Apr. 28, 2023) (Dkt. No. 285); *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 608-09 (3d Cir. 2024).  Thus, the Court recites only the facts necessary for resolution of the issue currently before the Court.

This matter involves four putative class actions, each filed in 2021, which were consolidated into a master consolidated action on March 1, 2024 (Dkt. No. 526).  The currently operative complaint is the "Consolidated Second Amended Class Action Complaint" ("CSAC") (Dkt. No. 1327), in which seventeen named putative class representatives bring twelve causes of action against eighteen corporate defendants.  The CSAC alleges that the "catastrophic failed restart" of the Limetree Bay Refinery (the "Refinery") on St. Croix, U.S. Virgin Islands, "caused the emission, release, and discharge" of various "chemicals, toxins, and particulates" from February 2021 until the Refinery was shut down by the EPA pursuant to the EPA's emergency powers under the Clean Air Act in May 2021.  (Dkt. No. 1327 at 2-3, 5).  Seven defendants—the ArcLight and Freepoint Defendants and Pinnacle (together, the "Settling Defendants")—have entered into two separate settlements with Plaintiffs that would resolve all of Plaintiffs' claims against the Settling Defendants.  (Dkt. Nos. 1098 at 2, 1198 at 2).  Although the two settlements

were executed separately, the Settling Defendants and Plaintiffs (together, the "Settling Parties") "intend for the [Pinnacle] Settlement to be jointly administered with" the ArcLight and Freepoint Settlement.  (Dkt. No 1199 at 6).  Accordingly, Plaintiffs seek Preliminary Approval of both settlements.  Opposing Defendants challenge the ArcLight and Freepoint Motion[5] claiming that the settlement "would unduly prejudice" them by "interfer[ing] with and [] not adequately protect[ing] their rights to contribution, apportionment of fault, or potential indemnity claims." (Dkt. No. 1172 at 2).  The Court held a Preliminary Settlement Hearing on December 10, 2025.  Plaintiffs filed a Notice on December17, 2025, to address seven follow-up items stemming from the Preliminary Settlement Hearing.  (Dkt. No. 1637).

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Preliminary Approval of Class Action Settlement

The claims of "a class proposed to be certified for purposes of settlement" may be settled "only with the court's approval."  Fed. R. Civ. P. 23(e).  Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998).

A panel of the Third Circuit has described the procedures for preliminary and final approval of a proposed settlement as follows:

> [Approval of a settlement] typically proceed[s] in two stages.  At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation.  If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement.  At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing where class

---

[5] Opposing Defendants' Opposition challenges only the ArcLight and Freepoint Motion.  (Dkt. No. 1172).  Opposing Defendants did not file any opposition to the Pinnacle Motion.

> members may object to the settlement.  If the court concludes that the settlement is 'fair, reasonable and adequate,' the settlement is given final approval.

*In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 574 (3d Cir. 2014).  After conducting a "preliminary review of the settlement agreement," the Court must analyze the "conditional certification"[6] of the proposed class for settlement.  *Id.*  "Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013).  Further, the moving party bears the burden of proof.  *Id.*

Rule 23(a) enumerates the four "prerequisites" for a class member to sue "as representative parties on behalf of all members":

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Pro. 23(a).  As the Supreme Court has described it, "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate" and "effectively limit[s] the class claims to those fairly encompassed by the named plaintiff's claims."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citation modified).

Rule 23(b) enumerates three "types" of class actions that may be "maintained" if "Rule 23(a) is satisfied," each with their own requirements.  Fed. R. Civ. Pro. 23(b); *see also Wal-Mart Stores*, 564 U.S. at 346 ("Second, the proposed class must satisfy at least one of the three

---

[6] A panel of the Third Circuit has noted that "[t]he Advisory Committee's notes to the 2003 Amendments do contemplate that 'the decisions on certification [under Rule 23(a) and (b)] and settlement [under Rule 23(e)]' may 'proceed simultaneously.'"  *In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d at 581.

requirements listed in Rule 23(b).").  The settling parties represent that they are proceeding under the third type, which requires the Court to find: (A) "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and (B) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Pro. 23(b)(3).  Rule 23(b)(3) states that "matters pertinent to these findings include":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.[7]

Fed. R. Civ. Pro. 23(b)(3).

Rule 23(e)(2) requires the Court to find that the proposed settlement is "likely" to be approved as "fair, reasonable, and adequate" following the Final Fairness Hearing.  Fed. R. Civ. Pro. 23(e)(2); *see also Lundeen v. 10 W. Ferry St. Operations LLC*, 156 F.4th 332, n.10 (3d Cir. 2025) ("[B]efore directing that notice be issued to the class, the court generally grants preliminary approval of the settlement upon a showing that it 'will likely be able to approve the proposal under Rule 23(e)(2).'" (citation modified)); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent*

---

[7] The requirement that a court consider "[w]hether trial would present intractable management problems," is "not a consideration when settlement-only certification is requested, for the proposal is that there be no trial."  *Amchem Prods.*, 521 U.S. at 593; *see also In re Nat'l Football League Players*, 821 F.3d at 440 ("In a settlement class, this factor becomes essentially 'toothless' because 'a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial.").  Accordingly, while generally part of the applicable standard, the Court need not consider this factor under the present circumstances.

*Actions*, 148 F.3d 283, 299 (3d Cir. 1998).  In assessing fairness, Rule 23(e)(2) requires that a court

consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"The settlement is entitled to 'an initial presumption of fairness' if 'the court finds that: (1)

the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of

the settlement are experienced in similar litigation; and (4) only a small fraction of the class

objected.'"  *Wood*, 2020 WL 7711409 at *10 (quoting *In re Gen. Motors Corp. Pick-Up Truck

Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).  However, "[d]espite the relatively

low bar for preliminary approval, the court does not act as a mere rubber stamp for the parties'

proposed agreement."  *Id.*; *see also In re Nat'l Football League Players' Concussion Inj. Litig.*,

961 F.Supp.2d 708, 714-15 (E.D. Pa. 2014) (stating that "[j]udicial review must be exacting and

thorough" in part because "the adversariness of litigation is often lost after the agreement to

settle").  As such, the court is required to determine whether "the proposed settlement discloses

grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of

class representatives or segments of the class, or excessive compensation of attorneys, and whether

it appears to fall within the range of possible approval."  *In re Nat'l Football League Players*, 961

F.Supp.2d at 714; *see also Wood*, 2020 WL 7711409 at *11 (same).  "Preliminary approval is not

a commitment to approve the final settlement." *Wood v. Saroj & Manju Invs. Philadelphia LLC*, 2020 WL 7711409 at *10 (E.D. Pa. Dec. 28, 2020); *see also Gates v. Rohm & Haas Co.*, 248 F.R.D. 434 at n.2 (E.D. Pa. 2008) ("The Court also concludes, and Rohm and Haas acknowledges, that it is proper for the Court to preliminarily certify the settlement classes at this juncture, provided that the grant of preliminary approval is without prejudice to the defenses and positions of the non-settling defendants as to any issue, including certification of the litigation classes.").

### B.      Standing to Object

Non-settling defendants typically do not have standing to challenge motions for preliminary approval of class action settlements. *See, e.g.*, *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995) (citing *In re School Asbestos Litig.*, 921 F.2d 1330, 1332 (3d Cir.1990)) (stating that non-settling defendants in a class action "lack standing to object to a partial settlement, because they are ordinarily not affected by such a settlement"); *Wallace v. Powell*, 288 F.R.D. 347, 372 (M.D. Pa. 2012); *In re Aetna UCR Litig.*, 2013 WL 4697994 at *6 (D.N.J. Aug. 30, 2013) ("Because a determination at this stage does not bind the Court on the merits, preliminar[y] approval of the subscriber settlement class does not affect the [non-settling] United defendants and therefore they lack standing to object.").

However, there is "a recognized exception to this general rule, which permits non-settling defendants to object to a partial [preliminary] settlement where they can demonstrate that they will suffer some formal legal prejudice as a result of the partial settlement." *Eichenholtz*, 52 F.3d at 482. For example, "'[t]here is consensus that a non-settling defendant has standing to object to a partial settlement which purports to strip it of a legal claim or cause of action, an action for indemnity or contribution for example,' or to invalidate its contract rights.'" *Id.* (citation omitted).

### C.    Contribution Rights Between Settling and Non-Settling Defendants

"It is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement."[8] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208 (1994).  Territorial law accords with the approach taken by the Supreme Court: "[w]here recovery is allowed against more than one defendant, the trier of fact shall apportion, in dollars and cents, the amount awarded against each defendant.  Liability of defendants to plaintiff shall be joint and several but, for contribution between defendants, each defendant shall be liable for that proportion of the verdict as the trier of fact has apportioned against such defendant[.]" 5 V.I.C. § 1451(d).   The Virgin Islands Supreme Court has recognized that "a non-settling defendant ha[s] a procedural mechanism to return a settling defendant to the case in order to provide for apportionment of liability" through Rule 14 of the Federal Rules of Civil Procedure— a rule which "survives in largely the same form as Rule 14 of the Virgin Islands Rules of Civil

---

[8] Among various methods of determining settlement credit, the Supreme Court has approved the "Proportionate Share" approach.  *Id.* at 217.  This approach dictates that "[t]he money paid [in a pre-trial partial settlement] extinguishes any claim that the injured party has against the released tortfeasor and also diminishes the claim that the injured party has against the other tortfeasors *by the amount of the equitable share of the obligation* of the released tortfeasor." *Id.* at 209 (emphasis added).  Under this approach, each joint tortfeasor is "responsible for precisely its share of the damages[.]"  *Id.* at 210.  Apportionment of damages is to be determined at trial as such a determination "may require little or no additional trial time," given that "[t]he parties will often need to describe the settling defendant's role in order to provide context for the dispute" and "a defendant will often argue the 'empty chair' in the hope of convincing the jury that the settling party was exclusively responsible for the damage."  *Id.* at 217.  Further, "the remaining defendant (or defendants) may settle before trial, thus making any determination of relative culpability unnecessary[.]"  *Id.*  The Proportionate Share approach recognizes that "deviations from the equitable apportionment of damages will be common, because settlements seldom reflect an entirely accurate prediction of the outcome of a trial," and does not disadvantage either the settling parties or the non-settling parties relative to the ultimate result at trial.  *Id.* at 212-13.  The burden is on the settling parties to strike a wise bargain.  *Id.* at 219-20.  Thus, [o]ne of the virtues of the proportionate share rule is that, unlike the *pro tanto* rule, it does not make a litigating defendant's liability dependent on the amount of a settlement negotiated by others without regard to its interests."  *Id.*

Procedure." *World Fresh Markets, LLC v. Palermo*, 74 V.I. 455, 466 (2021).  As a consequence of these procedural mechanisms, the Virgin Islands Supreme Court has held that "there is very little risk that a plaintiff who settles with one defendant may receive a windfall in the form of a double recovery, since nothing in the plain text of Rule 14 prohibits a non-settling defendant from naming the settling defendant as a third-party defendant after becoming aware of the settlement[.]" *Id.* at 466-67.

## III.   DISCUSSION

### A.     Rule 23(a) Requirements for Class Certification

#### 1.     Numerosity

Rule 23(a)(1) requires that the proposed settlement class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is generally satisfied if there are more than 40 class members."  *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016); *see also In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 477 (W.D. Pa. 1999) ("Classes consisting of hundreds (and potentially thousands) of putative plaintiffs have routinely satisfied the numerosity requirement.").  When determining numerosity, "a court may accept common sense assumptions."  *Clarke v. Lane*, 267 F.R.D. 180, 195 (E.D. Pa. 2010) (citing *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D.Pa.2001)).

Plaintiffs argue that the numerosity requirement is "easily" met here because "the Settlement Class includes thousands of St. Croix residents who were impacted by the toxic Release Incidents."  (Dkt. Nos. 1099 at 14, 1199 at 12).  At the Preliminary Settlement Hearing, Plaintiffs noted that the proposed settlement class contains at least 6,000 households within the Affected

Geographic Area,[9] and estimated that each household contains four individuals, totaling at least 24,000 people in the settlement class. This estimate accords with "common sense assumptions," in light of the size of the Affected Geographical Area. *See Linerboard*, 203 F.R.D. at 205 ("Numerosity does not require evidence of the exact number or identification of the proposed class."). The Court additionally observes that at one point, the class was represented by forty-three named class representatives (Dkt. No. 529 at 1), which alone could satisfy the general numerosity requirement of "more than 40 class members." *In re Nat'l Football League Players*, 821 F.3d at 426. Accordingly, the Court finds that the numerosity requirement has been met.

### 2.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Nat'l Football League Players*, 821 F.3d at 426–27 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)); *see also Linerboard*, 203 F.R.D. at 205 (stating that commonality "is easily met because it may be fulfilled by a single common issue"). The claims of the class members "must depend upon a common contention" and "must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Nat'l Football League Players*, 821 F.3d at 350 (citing *Dukes*, 564 U.S at 350). In other words, commonality requires the plaintiff to "demonstrate[] that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S at 349 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

---

[9] The Settling Parties have defined the "Affected Geographic Area" to mean "the western portion of the Island of St. Croix, more particularly described as bounded by 64.74 degrees West Longitude and the sea." (Dkt. No. 1099-1 at 4; 1199-1 at 4).

Plaintiffs argue that commonality is met because there are "numerous common issues of law and fact," including whether the ArcLight Defendants "acted negligently, recklessly, or illegally by failing to implement safeguards and undergo inspections, circumventing ordinary regulatory processes, and rushing the Refinery restart before undertaking improvements and repairs necessary for safe operations," and whether the ArcLight Defendants' "acts and omissions violated the law and/or constituted gross negligence" and their "conduct caused injury to the Plaintiffs and Settlement Class Members."  (Dkt. No. 1099 at 14).  Plaintiffs argue that commonality is met in the Pinnacle Settlement due to the common question of "whether Pinnacle acted negligently in its provision of labor to fill hundreds of jobs at the Refinery," and "whether Pinnacle's conduct could have caused injury to the Plaintiffs and Settlement Class Members." (Dkt. No. 1199 at 13).  Plaintiffs further argue that a "[c]lasswide proceeding can generate common answers to these questions[.]"  (Dkt. Nos. 1099 at 14, 1199 at 13).

In the mass torts context, courts have found factual and legal commonality among a class of plaintiffs alleged to have all been affected by a mass tort—including mass polluting events.  *See, e.g.*, *Katz v. AvalonBay Communities, Inc.*, 2018 WL 5278702 at *8 (D.N.J. Oct. 24, 2018) ("Class actions involving mass torts (such as fires), where a defendant's allegedly negligent conduct is central to the liability inquiry, routinely satisfy the commonality requirement."); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 440 (E.D. Pa. 2008) (holding that commonality is established by "the fundamental factual issue of exposure to the alleged pollutants" that is "common to all class members" and that "legal issues" such as "questions of duty, breach, causation and damages" as well as "statutory and intentional tort claims . . . raise additional common questions."); *Josephat v. St. Croix Alumina, LLC*, 2000 WL 1679502 at *4-5 (D.V.I. Aug. 7, 2000) (finding common questions of law and fact related to Defendants' "handling" of "red dust containing bauxite" that

allegedly caused mass property damage and personal injury).  Accordingly, the Court finds that the commonality requirement has been met on both questions of law and fact in light of the common issues of fact underlying the personal injury and property damage allegedly suffered by Plaintiffs as a result of the four Release Events at the Refinery, and the common questions of territorial tort law underlying Defendants' alleged liability stemming from those events.

### 3.    Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical of the claims" of the class.  Fed. R. Civ. P.  23(a)(3).  Typicality is a "low threshold."  *In re Nat'l Football League Players*, 821 F.3d at 428 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001)).  The typicality requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (noting that typicality does not require "that all putative class members share identical claims").  Typicality is satisfied "where [the] [c]lass representatives' claims and those of the putative class members arise from the same conduct."  *Braun v. Philadelphia Inquirer, LLC*, 2025 WL 1314089 at *5 (E.D. Pa. May 6, 2025).

Plaintiffs argue that typicality is met in the ArcLight Settlement because "each Settlement Class Member's claim arises from the same alleged course of conduct: [ArcLight] Defendants' allegedly rushed, inadequate, intentional, reckless, and negligent actions in restarting the Refinery for a time-sensitive commercial opportunity, which caused and contributed to the toxic Releases." (Dkt. No. 1099 at 15).  Plaintiffs argue that typicality is met in the Pinnacle Settlement because "each Settlement Class Member's claim arises from the same alleged course of conduct: Pinnacle's allegedly negligent actions in supplying workers to some companies engaged in the Refinery Restart for LBT, which caused and contributed to the toxic Releases."  (Dkt. No. 1199 at 14).

In other mass tort class actions, courts have found typicality where "[a]ll class members' claims arise from and challenge the same course of alleged conduct, and thus the interests of the class representatives are aligned with those of the class members" and "any probable factual differences are more relevant to damages than to liability." *Gates*, 248 F.R.D. at 441; *see also Josephat*, 2000 WL 1679502 at *5 ("Slight factual differences between the damages and/or injuries incurred by various class members will not render their claims atypical if their claims arise from the same event or practice or course of conduct and are based on the same or similar legal theory. In other words, the typicality inquiry focuses on Defendants' behavior not on Plaintiffs'.").

The CSAC states that the named representatives of the class are "all persons or entities: a) who owned or rented property (real and/or personal) in the Affected Geographic Area on or after February 3, 2021; or b) who resided in, worked in, operated a business in, or were present in the Affected Geographic Area during the time period from February 3, 2021 to May 26, 2021." (Dkt. No. 1327 at 7). The injuries of each named class representative to their person, property, and/or commercial activities are recounted in the CSAC. (Dkt. No. 1327 at 7-12). Although factual differences exist between the precise injury sustained by each named representative, their claims of damage arise from the same events—the Release Events at the Refinery—and are based on common legal theories of tort liability. *Id.*; *see also Gates*, 248 F.R.D. at 441; *Josephat*, 2000 WL 1679502 at *5. Accordingly, the Court finds that the typicality requirement has been met because the named representatives' claims are typical of the settlement class.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts look at both "the qualifications of class counsel and the class representatives" and "aims to root out conflicts of interest within the class to ensure that

all class members are fairly represented in the negotiations." *In re Nat'l Football League Players*, 821 F.3d at 428.

a)    **Class Counsel**

The Court must evaluate whether the attorneys: "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995). Rule 23(g) sets forth a list of non-exhaustive factors that a court "must consider" in regard to the adequacy of class counsel, including "counsel's work in the pending class action, experience in handling class actions or other complex litigation, knowledge of the applicable law, and the resources available for representing the class." *In re Nat'l Football League Players*, 821 F.3d at 429 (citing Fed. R. Civ. P. 23(g)(1)(A)). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A); *see also In re Onix Grp., LLC Data Breach Litig.*, 2024 WL 3015528 at *4 (same).

Plaintiffs argue that Co-Lead Class Counsel have "demonstrated that they [] satisfy the adequacy requirements of Rule 23(a)(4)" because they have "thoroughly investigated the class claims, promptly filed suit, participated in Limetree Bay Refining's bankruptcy to preserve class members' claims, successfully obtained injunctive relief after extensive evidentiary hearings, opposed Defendants' attempts to dismiss the litigation and to stay discovery, participated in multiple mediations, and have vigorously engaged in discovery." (Dkt. Nos. 1099 at 16, 1199 at 14-15). Indeed, this Court has previously recognized the adequacy of Class Counsel's experience in its March 1, 2024 Memorandum Opinion and Order, noting that "the Court has reviewed the qualifications of all of the proposed appointments and has found that all of the attorneys that Plaintiffs have proposed . . . are well-qualified for appointment." Memorandum Opinion and Order, *Boynes v. Limetree*, No. 21-cv-0253 (D.V.I. Mar. 1, 2024) (Dkt. No. 528 at 4). The Court's

15

view has not changed as this matter has continued to be vigorously litigated at every turn, as evidenced, *inter alia,* by briefing and argument in opposition to a motion to stay, in support of the preliminary approval of settlements, and by numerous discovery disputes on the record.  *See Gates*, 248 F.R.D. at 441 ("Facing experienced and diligent defense counsel, counsel has vigorously pursued this lawsuit, successfully resisted several motions for partial summary judgment, and ably represented the class members in various discovery disputes.").  Accordingly, the Court finds that Class Counsel have adequately represented the settlement class, and will appoint Kerry Miller of Fishman Haygood, L.L.P., Daniel Charest of Burns Charest LLP, and Shanon J. Carson of Berger Montague PC as Co-Lead Class Counsel for the Settlement Class, and Lee J. Rohn of Lee J. Rohn & Associates LLC as Liaison Counsel for the Settlement Class.

### b)    Class Representatives

To fulfill the requirement of adequacy, "[a] class representative must represent a class capably and diligently."  *In re Nat'l Football League Players*, 821 F.3d at 430.  Class representatives who possess "a minimal degree of knowledge" about the litigation are "adequate." *Id.* (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).  Such class representatives "ably discharge[] their duties" when they "closely follow[] the litigation, authoriz[e] the filing of the Class Action Complaint, and approv[e] the final settlement." *Id.*; *see also In re Onix Grp., LLC*, 2024 WL 3015528 at *3 (finding that adequacy is met when "representative Plaintiffs have been actively participating in the litigation of this case by providing documents, answering their counsel's questions, and reviewing the complaint and settlement terms"); *Wood*, 2020 WL 7711409 at *5 (Dec. 28, 2020) (finding adequate a class plaintiff who "represented the class capably and diligently . . . provided counsel with the paperwork and information they needed to initiate this case and substantiate [plaintiff's] claims," and participated in settlement).

Plaintiffs argue that the class representatives have more than fulfilled the Rule 23(a)(4) requirement as Plaintiffs "are actively participating in discovery, and were in communication with counsel regarding the Litigation[.]"  (Dkt. Nos. 1099 at 16, 1199 at 14).  At the Preliminary Settlement Hearing, Plaintiffs elaborated on this, noting that class representatives have each been responsive and involved at the appropriate junctures; have been aware of case developments; have been subjected to discovery; have sat for depositions; have had their medical histories examined; have discussed the proposed settlements with counsel; and support the proposed settlements. Accordingly, the Court finds that the class representatives have adequately represented the settlement class, and will appoint the named representatives of this litigation as the Class Representatives for the Settlement Class.  *See supra*, n.1.

### c)     Conflicts of Interest

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012).  If a conflict of interest exists within a proposed settlement class, there must be "structural protections to assure that differently situated plaintiffs negotiate for their own unique interests."  *Id.* at 432 (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

The Plaintiffs' updated "Claimant Payment Formula," submitted on December 17, 2025, sets forth a "pro rata point system" that accounts for various forms of injury and damage "encompassing property damage, nuisance, trespass, cistern related physical impact, physical health manifestations, economic losses, and non-reimbursed out-of-pocket expenses" that arose

17

from the Release Events. (Dkt. No. 1637-1 at 2). The Claimant Payment Formula proposes that the payout to each Class Member be based upon their individual tally of points pro-rated to "the total amount of points awarded" to all Class Members who filed claims. *Id.* As such, the unique interests of each class member, based upon the specific injury they suffered stemming from the Release Events that are common to all class members, are structurally accounted for in the proposed settlement.[10] *Dewey*, 681 F.3d at 432. Further, the interests and incentives of the named representatives are aligned with the class members, as explained by Plaintiffs at the Preliminary Settlement Hearing, because the named representatives each have common, fundamental exposures to the Release Events resulting in an array of impacts, losses, and expenses for each individual. Accordingly, the Court finds that there is no conflict of interest between the class representatives and the class members.[11]

---

[10] In particular, at the Preliminary Settlement Hearing, Plaintiffs explained that the medical monitoring claims for future-manifesting injuries are fundamentally premised on exposure to contaminated cisterns. The Claimant Payment Formula contains two tiers of points granted to class members with cistern exposure based upon the length of their exposure to the cistern. (Dkt. No. 1637-1 at 2). Further, the Claimant Payment Formula provides a point-multiplier based upon the Zone within the Affected Geographic Area in which the class members' claims arose. (Dkt. No. 1637-1 at 3, 1737-3 at 2). The Zones that experienced more intense oil rains and noxious gas releases—based upon expert reports analyzing the wind patterns and measuring the geographic reach of the impact of each Release Event—receive higher point-multipliers than the Zones that experienced less intense effects. Thus, the proposed settlements structurally account for the unique interests of each class members who suffered the exposure common to all class members. *See Dewey*, 681 F.3d at 432 (mandating "structural protections to assure that differently situated plaintiffs negotiate for their own unique interests.").

[11] Courts have also found that settling parties working with an experienced mediator to facilitate arms' length negotiation weighs in favor of finding adequacy. *See, e.g.*, *In re Philadelphia Inquirer Data Sec. Litig.*, 2025 WL 845118 at *6 (E.D. Pa. Mar. 18, 2025) ("[T]he parties worked with experienced mediator Bennett Picker, Esquire to facilitate arms' length negotiations, which weighs in favor of finding adequacy."); *Alves v. Main*, 2012 WL 6043272 at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."). Plaintiffs described multiple in-person mediation sessions with both the ArcLight and Freepoint Defendants and Pinnacle, which contributed to the parties reaching an agreement in principle. (Dkt. Nos. 1099 at 10, 1199 at 10). The Court thus

### B.    Rule 23(b) Requirements for Class Certification

#### 1.    Predominance

Rule 23(b)(3) requires that the "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement "incorporates the Rule 23(a) commonality requirement," but is "far more demanding[.]" *In re Nat'l Football League Players*, 821 F.3d at 434 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir.2004)). Courts should be "more inclined to find the predominance test met in the settlement context." *Id.* (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc)). When a defendant's conduct is "common to all class members, and all class members were harmed by that conduct," then "common questions of law and fact predominate over individual factual questions, such as the specific degree of damages incurred" because "[t]he issues facing each class member are the same: demonstrating the degree of the [injury] and proving Defendant's culpability." *In re Onix Grp., LLC*, 2024 WL 3015528 at *4.

Plaintiffs allege that predominance is met here because Plaintiffs' claims "present substantially overlapping legal claims arising out of the same underlying facts about the Refinery, Defendants' conduct, and the harms suffered" and "[t]hese claims belong to all members of the proposed Settlement Class." (Dkt. Nos. 1099 at 17, 1199 at 16). Plaintiffs further argue that "the preliminary injunction phase of this litigation has already demonstrated that Plaintiffs will be able to utilize common evidence to prove the central issues at the heart of the Litigation," which supports a finding of predominance. *Id.* (citing *In re FieldTurf Artificial Turf Mktg. & Sales Pracs. Litig.*, 2023 WL 4551435, at *6 (D.N.J. July 13, 2023) (noting that predominance turns on the

---

finds that the use of the independent mediator in the settlement negotiations adds weight to the Court's finding of adequacy and a lack of a conflict of interest.

"nature of the evidence and whether the evidence used at trial to prove the *essential elements* of a plaintiff's claim is better suited for class or individual treatment.")). In the mass tort context, predominance can be found when the proposed class "seek[s] relief based on exposure alone," and "individual differences in medical histories, lifestyles and property uses do not affect the causation analysis for purposes of liability." *Gates*, 248 F.R.D. at 443.

As with *Gates*, with respect to the property damage and personal injury alleged, "the common question of whether there was exposure dominates the individual issues as to the amount of exposure, which may vary from well to well, or the actual decrease in property value." *Id.* Accordingly, the Court finds that the predominance requirement has been met because the common questions of law and fact stemming from the Release Events' effect on class members predominate over any individual factual questions, such as the specific degree of damages incurred.

### 2.    Superiority

Rule 23(b)(3) requires the Court to determine that "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This requires a court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Nat'l Football League Players*, 821 F.3d at 434 (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004)). In doing so, Rule 23(b)(3) directs courts to consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *Id.* at 435 (citing Rule 23(b)(3)(A)–(D)). Superiority is satisfied where the settlement prevents "duplicative lawsuits and enables fast processing of a multitude of claims." *Id.*

20

Here, Plaintiffs argue that superiority is met because "[s]ettlement permits many similarly situated individual and small business Settlement Class Members to simultaneously and efficiently resolve their common claims against Settling Defendants in a single forum and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender." (Dkt. Nos. 1099 at 18, 1199 at 17).

There can be no doubt that the class action vehicle is a superior method to resolving the instant litigation, when compared to individual suits by each class member. First, "'concentrating the litigation of claims in a single superior action' is preferable to 'numerous individual suits brought by claimants.'" *In re Nat. Football League Players' Concussion Inj. Litig.*, 307 F.R.D. at 382 (citations omitted); *see also In re Nat. Football League Players' Concussion Inj. Litig.*, 821 F.3d at 435 ("[S]uperiority [is] satisfied because 'the [s]ettlement avoids thousands of duplicative lawsuits and enables fast processing of a multitude of claims.'"). This Court has previously permitted consolidation of four separate putative class actions into the present single litigation because "[p]ermitting four nearly identical actions to proceed separately would unquestionably waste judicial resources," and that conclusion remains unchanged. *Boynes v. Limetree Bay Ventures, LLC*, 2024 WL 898245 at *7 (D.V.I. Mar. 1, 2024). Further, the "cost and complexity of this litigation"—a  mass environmental tort class action stemming from four separate release events of various oil byproducts and noxious gases—would undoubtedly be "impractical to litigate on an individual basis." *In re Onix Grp., LLC*, 2024 WL 3015528 at *4. Accordingly, the Court finds that the superiority requirement has been satisfied because the class action vehicle presents undeniable efficiency gains over litigating individual claims in the instant matter.

### C.    Preliminary Approval of the Proposed Settlement Terms

#### 1.    Presumption of Fairness

The Court finds that an "initial presumption of fairness" has been established under the present circumstances and that the proposed class settlements appear, preliminarily, to be within the range of what is sufficiently fair, reasonable, and adequate to be considered by the Class Members. *In re Gen. Motors Corp.*, 55 F.3d at 785. There is evidence, based upon the Court's experience with this matter and the record before the Court that: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; [and] (3) the proponents of the settlement are experienced in similar litigation."[12] *Id.*

Plaintiffs argue that here, both the adequate representation and the arm's length requirements have been met because "extensive negotiations resulting in the Settlement were conducted at arm's length by advocates experienced in complex litigation, with full knowledge of the strengths and weaknesses of this Litigation (as against Settling Defendants), and who are committed to vigorous representation of the Class as demonstrated by their aggressive litigation of this case." (Dkt. Nos. 1099 at 21, 1199 at 15). Plaintiffs additionally represent that "Co-Lead Class Counsel analyzed the challenges the putative Settlement Class faced going forward, and conducted an in-depth analysis (with the help of experts) of the produced data and documents," and that "[t]hese efforts allowed Class Counsel to make informed demands and evaluate the strengths and weaknesses of Settling Defendants' position including in comparison to that of other Defendants." (Dkt. Nos. 1099 at 22, 1199 at 21).

---

[12] While the court in *In re Gen. Motors Corp.* also established "only a small fraction of the class objected" as an additional requirement for the presumption of fairness to apply at the preliminary approval stage, other courts have aptly noted since that time that "[a]t this [preliminary approval] juncture, the Court cannot consider the objections of class members as none have yet been filed." *Gates*, 248 F.R.D. at n.8.

As in *In re Nat'l Football League Players*, "[t]here is nothing to indicate that the Settlement is not the result of good faith, arm's-length negotiations between adversaries." 961 F.Supp.2d at 715. Indeed, discovery appears to have been extensive, various discovery issues have been well-litigated throughout, and the settlements were aided by the mediator's involvement. *See In re Nat'l Football League Players*, 821 F.3d at 436 (detailing the "significant informal discovery" that demonstrated that class counsel "were aware of the strengths and weaknesses of their case."). Accordingly, the Court finds that the presumption of fairness applies to the proposed settlement.

## 2. Relief is Adequate and Equitable

Plaintiffs argue that here, the relief is adequate and equitable for four reasons. First, Plaintiffs argue that the "the costs, risks, and delay associated with trial and appeal weigh decidedly in favor of this Settlement" when weighed against the "certainty" that the settlements provide. (Dkt. Nos. 1099 at 22-23, 1199 at 22). For the ArcLight Settlement, Plaintiffs assert that the settlement provides "meaningful all-cash relief ($17.5 million)" and is "a fair resolution of the Settlement Class's claims against Settling Defendants." (Dkt. No. 1099 at 22). For the Pinnacle Settlement, Plaintiffs assert that the $550,000 amount for Pinnacle is fair given that Pinnacle is "a local Virgin Islands-based company with an eroding insurance policy" whose limited involvement in the underlying conduct involved "suppl[ying] some of the workforce that operated under LBT's and LBR's training and direction." (Dkt. No. 1199 at 21).

To determine whether a settlement "falls within the range of possible approval," a court must "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Nat'l Football League Players*, 961 F.Supp.2d at 714; *see also In re Nat'l Football League Players*, 821 F.3d at 440 (weighing "seriously" the "litigation risks inherent in pressing forward with the case" and finding that "the settlement represents a fair deal for the class when compared with a risk-adjusted estimate of the value of plaintiffs' claims").

23

Second, Plaintiffs argue that the "method proposed for processing Claims of Eligible Claimants here is fair and effective" because "the Net Settlement Funds will be distributed to Settlement Class Members in accordance with a point system considering the specific nature of the harm experienced by each Class Member" which "will ensure that Class Members are compensated according to the harms they sustained due to the Incidents." (Dkt. Nos. 1099 at 23, 1199 at 22). Plaintiffs further represent that "[a]s described in the Claim Form, Notice Plan, and Claimant Payment Formula," the proposed settlements' "allocation plan is easily calculable, objective, and a practicable method for efficient and equitable distribution that does not require overly complicated proof to be submitted for a Claimant to receive a share of the Settlement." (Dkt. Nos. 1099 at 23-24, 1199 at 22-23).

Third, Plaintiffs argue that the proposed attorneys' fees are appropriate, because courts within the Third Circuit "commonly find" that an "award not to exceed one-third of the Gross Settlement Fund" to be "fair, reasonable, and adequate," given the size of these settlement. (Dkt. Nos. 1099 at 24, 1199 at 23). At the Preliminary Settlement Hearing, Plaintiffs noted the number of years that this litigation has been vigorously litigated and the complexity of structuring the settlement plan for the class members. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 741 (3d Cir. 2001) (noting that attorney's awards are justified by "complex and/or novel legal issues, extensive discovery, acrimonious litigation, and tens of thousands of hours spent on the case by class counsel"). Indeed, there is a plethora of support for this award percentage for this size of a recovery. *See, e.g.*, *Lincoln Adventures LLC v. Certain Underwriters at Lloyd's, London*, 2019 WL 4877563 (D.N.J. Oct. 3, 2019) (33% fee for a $21,950,000 settlement); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2018 WL 7108059 (D.N.J. Dec. 3, 2018) (33% fee for a $10,796,800 settlement); *Esslinger v. HSBC Bank Nevada, N.A.*, 2012 WL 5866074 (E.D. Pa. Nov. 20, 2012)

(30% fee for a $23,500,000 settlement).  However, the Court anticipates that as further settlements occur in this matter, this award percentage may decrease.  Historically, there is precedent within the Third Circuit to approve "fee percentages rang[ing] from 4.1% to 17.92%" in "recoveries exceeding $100 million[.]"  *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998).  A percentage fee award should have an inverse relationship to the size of the net settlement amount.  *In re Cendant Corp.*, 243 F.3d at 736 ("In most instances, [the negotiated fee] will involve a sliding scale dependent upon the ultimate recovery, the expectation being that, absent unusual circumstances, the percentage will decrease as the size of the fund increases."); *see also In re Prudential Ins. Co.*, 148 F.3d at 339 ("The basis for this inverse relationship is the belief that 'in many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.'").  Thus, "district courts setting attorneys' fees in cases involving large settlements must avoid basing their awards on percentages derived from cases where the settlement amounts were much smaller."  *In re Cendant Corp.*, 243 F.3d at 736.

Fourth, Plaintiffs argue that the proposed Notice Plan is adequate because it is "robust" and includes "(1) individually mailed Short-Form Notices to the Settlement Class; (2) email notice to known addresses; (3) Publication Notice, including in local radio and print; (4) a Settlement Website that makes information and important documents regarding the Settlement accessible to Settlement Class Members, including, *inter alia*, the Long-Form Notice and Claim Form; (5) a toll-free number to provide Settlement Class Members with information regarding the Settlement; and (6) information at local Law Offices."  (Dkt. Nos. 1099 at 25, 1199 at 24).  Further, Plaintiffs represent that the proposed notice "describes the nature of the action and the claims at issue; the Settlement Class; the Settlement benefits; Settlement Class Members' rights, including the right

to opt out or object; the binding effect of a class judgment; the date of the fairness hearing; and other relevant information for the Class Members to make informed decisions." (Dkt. Nos. 1099 at 25-26, 1199 at 24). Further, the Notice Plan will include "Spanish language translations of certain Settlement-related materials," including a Spanish-language version of the website and the Summary Notice. (Dkt. No. 1637 at 3).

Fifth, Plaintiffs propose that Epiq Systems, Inc. ("Epiq") be appointed to administer the Settlements. Plaintiffs represent that Epiq is "an experienced and well-regarded firm that frequently handles settlement and claims administration in large complex class actions," and that Epiq has "been successfully administering the Limetree Water Program since 2023, and in that role has already assisted Plaintiffs and LBT in providing notice to eligible participants on St. Croix."[13] (Dkt. Nos. 1099 at 26; 1199 at 25). The Court finds that Epiq's prior experience with the Water Distribution Program and its relevant experience serving as the Administrator in similar class action settlements—as detailed in Epiq's Declaration (Dkt. No. 1099-7)—makes Epiq well-suited to be Administrator of these proposed settlements. Accordingly, the Court will appoint Epiq as the Administrator of the ArcLight and Freepoint and the Pinnacle Settlements.

Under the circumstances, the Court has a sufficient showing to conclude that the proposed settlements do not "disclose[]" any "grounds to doubt its fairness or other obvious deficiencies," and "appears to fall within the range of possible approval." *In re Nat'l Football League Players*, 961 F.Supp.2d at 714. While "[p]reliminary approval is not a commitment to approve the final settlement," the Court finds that the proposed settlements are "likely" to be approved as "fair,

---

[13] Epiq was jointly proposed by Plaintiffs and LBT as the Administrator for the Water Distribution Program. (Dkt. No. 432 at 3). The Court thereafter appointed Epiq to serve in that capacity. *Id.* at 8.

reasonable, and adequate" following the Final Fairness Hearing.  Fed. R. Civ. Pro. 23(e)(2); *see also Lundeen v. 10 W. Ferry St. Operations LLC*, 156 F.4th 332, n.10

### D.    Objections to Preliminary Settlement

As noted above, non-settling defendants in a class action generally "lack standing to object to a partial settlement, because they are ordinarily not affected by such a settlement." *Eichenholtz*, 52 F.3d at 482.  However, an exception to the rule "permits non-settling defendants to object to a partial settlement where they can demonstrate that they will suffer some formal legal prejudice as a result of the partial settlement." *Id.*  For example, "'[t]here is consensus that a non-settling defendant has standing to object to a partial settlement which purports to strip it of a legal claim or cause of action . . . ' or to invalidate its contract rights." *Id.* (citation omitted).

Here, Opposing Defendants object to the Preliminary Settlement for two reasons: (1) they claim that the settlement "interferes with and does not adequately protect their rights to contribution, apportionment of fault, or potential indemnity claims against Settling Defendants,[14] before the non-settling, Opposing Defendants have the procedural opportunity to pursue cross claims"; and (2) they claim that "[t]he settlement also purports to otherwise preclude any right to reduction or credit for the settlement amount against any judgment Plaintiffs may obtain against Non-Settling Defendants[.]"  (Dkt. No. 1172).  Thus, taken at face value, Opposing Defendants appear to have standing to challenge the proposed settlement on the grounds that it would "strip [Opposing Defendants] of a legal claim or cause of action." *Eichenholtz*, 52 F.3d at 482.  Opposing Defendants seek, as relief, that any Order the Court issues explicitly state that: "[n]on-Settling

---

[14] In the filing, "Settling Defendants" referred to the ArcLight and Freepoint Defendants. However, because the two settlements are substantially similar in regards to the Contribution Protection provisions, the Court will use this phrase to encompass Pinnacle as well.  *See infra* nn.16, 21.

Defendants retain the rights to bring third-party claims for contribution or indemnity against Settling Defendants to preserve apportionment of fault as well as any claim for *pro tanto* reduction or credit for any settlement amounts obtained by Plaintiffs[.]"  (Dkt. No. 1172 at 3-4).[15]

### 1.    Alleged Infringement of Right to Crossclaim

Opposing Defendants cite paragraph 39[16] of the ArcLight and Freepoint Settlement as allegedly infringing on their ability to pursue crossclaims.  (Dkt. No. 1172 at 5).  This "Offsetting" paragraph reads:

> In the event of a third-party claim, crossclaim, or counterclaim by any Non-Released Party against any Settling Defendant relating to the Incidents, such Settling Defendant(s) agree to oppose such third-party claims, crossclaim, or counterclaims, and to notify and cooperate with all Plaintiffs and Settlement Class Members (through Class Counsel) in the defense and any settlement of such third-party claim, crossclaim, or counterclaim, as reasonable and necessary.

(Dkt. No. 1099-1 at 25).[17]  Opposing Defendants further cite the Supreme Court of the Virgin Islands' decision in *World Fresh Markets, LLC v. Palermo* for the proposition that the Virgin

---

[15] Opposing Defendants made two additional requests.  First, they request that the Court defer consideration of the Plaintiffs' proposed settlement "until the Court is prepared, in accordance with the Amended Scheduling Order (Dkt. No. 1160) allowing the completion of class certification related discovery, to address certification of Plaintiffs' proposed litigation class(es) for the purposes of trial."  (Dkt. No. 1172 at 3).  The Court denies this request because briefing regarding class certification in the ongoing litigation will be complete by the time of the Final Fairness Hearing regarding the proposed settlements.  Moreover, the Court has no reason to take this timing into consideration, as partial settlement may occur simultaneously to the ongoing litigation.  Second, Opposing Defendants seek for any Order that the Court issues to explicitly state that: "any preliminary determination regarding class certification is for settlement purposes only, is without prejudice to the litigating defendants, and shall have no bearing or precedential or preclusive effect on certification of one or more litigation classes for purposes of trial."  (Dkt. No. 1172 at 3-4).  The case law on this point is clear as to the preliminary nature of the Court's ruling at this stage, and thus it is unnecessary and duplicative for the Court to make any additional pronouncements on this issue.  The Court will therefore deny this request.

[16] This provision does not appear in the Pinnacle Settlement.

[17] At the Hearing, Opposing Defendants additionally claimed that this provision which requires Settling Defendants to "oppose [] third-party claims, crossclaim, or counterclaims" inhibits Opposing Defendants' ability to bring crossclaims against Settling Defendants by requiring Settling Defendants' opposition of those crossclaims.  However, Opposing Defendants fail to

Islands Supreme Court has "held that section 1451(d) of the Virgin Islands Code limits apportionment of fault to 'defendants,' which does not include settling defendants who are no longer parties to the case." (Dkt. No. 1172 at 6 (citing *World Fresh Markets*, 74 V.I. 455, 467 (2021)).

In *World Fresh Markets*, the Virgin Islands Supreme Court did not permit apportionment between the settling defendants and the non-settling defendants because the non-settling defendants did not avail themselves of the proper procedural rule—Rule 14 of the Federal Rules of Civil Procedure[18]—to "return a settling defendant to the case in order to provide for apportionment of liability[.]" 74 V.I. at 466 ("As [plaintiff] Palermo correctly notes in her appellate brief, this is precisely what [non-settling defendant] World Fresh Market could have done after becoming aware of her settlement with [settling defendant] PDCM yet made no attempt to do so. Accordingly, we hold that the Superior Court committed no error when it declined to direct the jury to apportion damages between World Fresh Market and PDCM."). *World Fresh Markets* actually identifies two mechanisms by which a non-settling defendant can preserve its ability to cross-claim for contribution against a settling defendant: Rule 13(g)[19] and Rule 14. As noted above, Rule 14 enables a non-settling defendant to return a settling defendant to the litigation after the settlement. Fed. R. Civ. Pro. 14; *see also World Fresh Markets*, 74 V.I. at 466. Rule 13(g),

---

differentiate between their ability to bring crossclaims—a right which is preserved here—from their ability to bring crossclaims *unopposed*—which is not a right that Opposing Defendants possess in this litigation.

[18] Rule 14 of the Federal Rules of Civil Procedure was "made applicable to Superior Court proceedings through former Superior Court Rule 7" and today "survives in largely the same form as Rule 14 of the Virgin Islands Rules of Civil Procedure." *World Fresh Markets*, 74 V.I. at 467.

[19] "Rule 13(g) of the Federal Rules of Civil Procedure, like Rule 13(g) of the Virgin Islands Rules of Civil Procedure, expressly authorize[s] [a defendant] to file a crossclaim against [another defendant]." *World Fresh Markets*, 74 V.I. at n.2.

by contrast, enables a defendant to file a cross-claim against other co-defendants, thus preventing the settlement between any co-defendant and the plaintiff from resulting in the co-defendants' dismissal from the litigation. Fed. R. Civ. Pro. 13(g); *see also World Fresh Markets*, 74 V.I. at n.2. Thus, Opposing Defendants' claim that the release provision in the ArcLight and Freepoint Settlement does not "adequately protect[]" their "ability to . . . pursue potential crossclaims against the Settling Defendants for indemnity or contribution" (Dkt. No. 1172 at 5) is incorrect in that Opposing Defendants may utilize Rule 14 to return Settling Defendants to the litigation and pursue cross-claims against them, including contribution cross-claims.

Thus, presuming Opposing Defendants avail themselves of the procedural mechanisms available to them to keep Settling Defendants in the litigation, then Opposing Defendants' "ability to apportion fault among the Settling Defendants" (Dkt. No. 1172 at 5) will be preserved, contrary to their concerns expressed in the Opposition. As Opposing Defendants correctly note, Section 1451(d) of the Virgin Islands Code "limits apportionment of fault to 'defendants[.]'" (Dkt. No. 1172 at 6). In full, Section 1451(d) states:

> Where recovery is allowed against more than one defendant, the trier of fact shall apportion, in dollars and cents, the amount awarded against each defendant. Liability of defendants to plaintiff shall be joint and several but, for contribution between defendants, each defendant shall be liable for that proportion of the verdict as the trier of fact has apportioned against such defendant.

5 V.I.C. § 1451(d). *World Fresh Markets* recognizes that "nothing in the plain text of Rule 14 prohibits a non-settling defendant from naming the settling defendant as a third-party defendant after becoming aware of the settlement" and "since a third-party defendant is a defendant, section 1451(d) would require apportionment and prevent the plaintiff from receiving a double recovery." 74 V.I. at 466-67. Thus, the case that Opposing Defendants cite in their favor actually cuts against

their argument.[20]  Accordingly, the Court concludes that the proposed settlement does not infringe on the right of the Opposing Defendants to pursue crossclaims, because Opposing Defendants retain all opportunities afforded to them under Rules 13 and 14 of the Federal Rules of Civil Procedure to pursue cross-claims, including against settling co-defendants.

### 2.    Alleged Infringement on Right of Apportionment

Opposing Defendants argue that the ArcLight and Freepoint Settlement infringes on their rights to make "any claim for *pro tanto* reduction or credit for any settlement amounts obtained by Plaintiffs." (Dkt. No. 1172 at 3-4).  They cite to paragraph 40[21] of the ArcLight and Freepoint Settlement as so infringing on their apportionment rights. (Dkt. No. 1172 at 5).  This "Contribution Protection" paragraph reads:

---

[20] Opposing Defendants cite two additional cases in support of their argument.  First, Opposing Defendants cite *Vandenhouten v. Olde Towne Tours, LLC* for the proposition that "contribution actions against tortfeasors who settle with a plaintiff are precluded as a matter of law in the Virgin Islands." (Dkt. No. 1172 at 7 (citing 2009 WL 1956360 at *3 (D.V.I. July 8, 2009)).  However, Opposing Defendants recognize that *Vandenhouten* was decided prior to *World Fresh Markets*, and thus it is of questionable value, particularly following *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 976 (V.I. 2011).  *See World Fresh Markets*, 74 V.I. at 465 ("Section 1451(d) was enacted by the Legislature as part of a comprehensive scheme applicable to all civil cases, in which the Legislature adopted comparative fault, abolished the use of contributory negligence as a bar to recovery, mandated apportionment among defendants, provided for joint and several liability, and recognized a cause of action for contribution. . . . Were this Court to recognize a common law rule to 'supplement' section 1451(d) by providing for apportionment among individuals other than defendants, the effect would be to substitute the judgment of this Court for that of the Legislature on an issue of substantive law on which it has clearly spoken.").  Second, Opposing Defendants cite *Gomes v. Brodhurst* for the proposition that courts "applying Virgin Islands law [should] adopt[] apportionment of fault for all joint tortfeasors at trial." (Dkt. No. 1172 at 8 (citing 394 F.2d 465, 470 (3d Cir. 1967)).  However, *World Fresh Markets* explicitly rejected the approach adopted by the Third Circuit in *Gomes* as contrary to the Virgin Islands Legislature's exact language and intent.  74 V.I. at 465-66 ("Had the Legislature not enacted section 1451(d) at all, pursuant to the *Gomes* decision, the trier of fact would be required to apportion liability among all joint tortfeasors, whether they were defendants or non-defendants.  Thus, the position taken by [non-settling defendant] World Fresh Market—that the Legislature intended for the common law as expressed in *Gomes* to continue alongside section 1451(d)—would result in section 1451(d) being entirely superfluous and serving no legislative purpose.").

[21] This provision appears as paragraph 24 of the Pinnacle Settlement.  (Dkt. No. 1199-1 at 16).

>The Parties intend that this Settlement Agreement shall result in a *pro rata* reduction of the Plaintiffs' and Settlement Class Members' damages recoverable against any Non-Released Party but only to the extent provided under any applicable law, statute, regulation, or common law principle that provides contribution rights against the Settling Defendants concerning any claim related to the litigation. For the avoidance of doubt, such *pro rata* reduction would allow any Non-Released Parties to reduce the amount of the Plaintiffs' and Class Settlement Members' recoverable damages against them in an amount equal to any share that is actually apportioned to any Settling Defendant(s) pursuant to a final, non-appealable judgment of a court of competent jurisdiction.

(Dkt. No. 1099-1 at 26). Opposing Defendants assert that the Settling Parties "have intentionally left these provisions and the right of preserving apportionment against settling parties via third party claims intentionally vague," and that "as Plaintiffs' counsel is no doubt aware, by limiting the 'pro rata reduction' to contribution rights available under applicable law and/or amounts actually apportioned to any Settling Defendants, the Plaintiffs and Settling Defendants are open to argue that no such rights exist in order to avoid apportionment entirely." (Dkt. No. 1172 at 6-7).

First, Opposing Defendants' claim that they are entitled to a *pro tanto*[22] reduction for any settlement amount is questionable. 5 V.I.C. § 1451(d) appears to espouse a proportional approach to apportionment: "each defendant shall be liable for that *proportion* of the verdict as the trier of fact has apportioned against such defendant." (emphasis added). A proportionate share approach requires that each joint tortfeasor is "responsible for precisely its share of the damages[.]" *McDermott, Inc.*, 511 U.S. at 210 ("The money paid [in a pre-trial partial settlement] extinguishes any claim that the injured party has against the released tortfeasor and also diminishes the claim

---

[22] The *pro tanto* approach would dictate that "[t]he money paid extinguishes both any claims on the part of the injured party and any claim for contribution by another tortfeasor who has paid more than his equitable share of the obligation and seeks contribution." *McDermott, Inc.*, 511 U.S. at 209. This approach is a method of resolving contribution rights that is mutually exclusive with the Proportionate Share approach which utilizes the *pro rata* apportionment method. *Id.*

that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor[.]").

Second, the paragraph cited by Opposing Defendant accounts for Opposing Defendants' apportionment rights because it explicitly acknowledges "[f]or the avoidance of doubt" that "such *pro rata* reduction would allow any Non-Released Parties to reduce the amount of the Plaintiffs' and Class Settlement Members' recoverable damages against them in an amount equal to any share that is actually apportioned to any Settling Defendant(s) pursuant to a final, non-appealable judgment of a court of competent jurisdiction." (Dkt. No. 1099-1 at 26). Thus, the Court does not agree with Opposing Defendants' characterization that this provision is "intentionally vague" or leaves an opening for Plaintiffs and Settling Defendants "to argue that no such [apportionment] rights exist in order to avoid apportionment entirely." (Dkt. No. 1172 at 6-7). It also cannot be objectionable that Plaintiffs limit the apportionment rights in the Proposed Settlement to those available "under any applicable law, statute, regulation, or common law principle," (Dkt. No. 1099-1 at 26) as Opposing Defendant would not be entitled to apportionment if such apportionment is not provided for "under any applicable law, statute, regulation, or common law principle."

Finally, Opposing Defendants further claim that the contribution provision is in "conflict[] with Virgin Islands' public policy of preventing a 'windfall' to the Plaintiff in the form of double recovery or more than one full recovery for their injuries." (Dkt. No. 1172 at 9). This concern is not valid because a proportional approach does not anticipate any "double recovery" by a plaintiff—but rather protects each defendant's ability to negotiate independently. *See McDermott, Inc.*, 511 U.S. at 220 ("It seems to us that a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of

the total loss. In fact, one of the virtues of the proportionate share rule is that, unlike the *pro tanto* rule, it does not make a litigating defendant's liability dependent on the amount of a settlement negotiated by others without regard to its interests.").

In sum, contrary to Opposing Defendants' claims, the Settlement Agreement does not appear to limit Opposing Defendants' ability to pursue crossclaims or seek contribution "to the extent provided under any applicable law, statute, regulation, or common law principle."  As this is a preliminary ruling on the proposed settlements, Opposing Defendants retain every opportunity to continue to make renewed arguments at the time of Final Approval.  However, at this time, the Court will deny the Opposing Defendant's request that the Court include in any Order that the Court issues a statement that "Non-Settling Defendants retain the rights to bring third-party claims for contribution or indemnity against Settling Defendants to preserve apportionment of fault as well as any claim for *pro tanto* reduction or credit for any settlement amounts obtained by Plaintiffs." (Dkt. No. 1172 at 3-4).  It goes without saying that the Federal Rules of Civil Procedure defining the procedure by which a party may bring cross-claims and the applicable statutory framework regarding apportionment of liability continue to govern this litigation.

## IV.   CONCLUSION

In view of the foregoing, the Court will grant Plaintiffs' Motions for Preliminary Settlement Approval, as set forth in the ArcLight and Freepoint Motion (Dkt. No. 1098) and the Pinnacle Motion (Dkt. No. 1198).  Accordingly, the Court will conditionally certify the Settlement Class as embodied in the Motions for Preliminary Settlement Approval, and preliminarily approve the Settlements with both the ArcLight and Freepoint Defendants and Pinnacle as fair, reasonable and adequate.  The Court will: appoint the named representatives in this litigation as the Class Representatives of the Settlement Class; appoint the preliminarily appointed Co-Lead Class

Counsel as Class Counsel representing the Settlement Class; appoint Epiq as the Settlement Administrator; approve the proposed Notice Plan; and establish deadlines for objections and opting out of the proposed class.  The date for the Final Approval Hearing will be set by further Order of the Court.  Finally, the Court will deny the relief sought by Opposing Defendant in their Opposition (Dkt. No. 1172).

An appropriate Order accompanies this Memorandum Opinion.

Dated: February 16, 2026

_____/s/_____
WILMA A. LEWIS
Senior District Judge